UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

SALEM ABDEL-FARES,

               Plaintiff,         Civil Action No. 14-13301
                                           Honorable George C. Steeh
     v.                             Magistrate Judge David R. Grand

JASON TERRIS, WILLIAM TRUE,
JAMES TAYLOR

               Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO DISMISS [15] AND TO DISMISS PLAINTIFF'S AMENDED COMPLAINT [14] WITH PREJUDICE

Before the Court is the Motion to Dismiss filed by Defendants Jason Terris and William True (collectively, "Defendants") on January 29, 2015. [15]. On April 9, 2015, *pro se* plaintiff Salem Abdel-Fares ("Abdel-Fares"), an incarcerated person, filed a response to the motion. [18]. Defendants filed a reply on April 11, 2015. [19]. An Order of Reference was entered on October 10, 2014, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). [7]. Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. L.R. 7.1(f). Having reviewed the pleadings and other papers on file, the Court finds that the facts and legal issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time.

**I.    RECOMMENDATION**

For the reasons set forth below, the Court RECOMMENDS that Defendants Jason Terris and William True's Motion to Dismiss [15] be GRANTED and that Abdel-Fares' Amended Complaint [14] be DISMISSED WITH PREJUDICE.

1

**II.      REPORT**

    **A.      Background**

*Pro se* plaintiff Abdel-Fares is and has at all times relevant to this action been incarcerated at the Federal Corrections Institution in Milan, Michigan ("FCI Milan"). [1 at ¶¶ 8-9]. On August 25, 2014, Abdel-Fares filed a complaint pursuant *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), alleging that about a month after he arrived at FCI Milan, he was placed on a high accountability program ("HA program") which required him to report to a prison officer every two hours, in violation of his rights under the First and Fourth Amendments of the United States Constitution. [1 at 2-4]. Certificates of service were filed for defendants True and Terris on November 25, 2014 [8, 9], but nothing on the docket indicates that defendant James Taylor has been served [18 at 1].[1]

On January 20, 2015, Defendants filed a motion to dismiss [12], arguing that Abdel-Fares' complaint then on file should be dismissed because he did not allege any physical injuries, thereby preempting his constitutional claims under 42 U.S.C. § 1997e(e). [12 at 17-20]. On January 23, 2015, Abdel-Fares filed an amended complaint in which he added allegations of physical injuries suffered as a result of Defendants' conduct and a demand for jury trial. [14 at 3, 6]. Defendants then filed the instant motion to dismiss Abdel-Fares' amended complaint [15], Abdel-Fares filed a response to that motion, and Defendants filed a reply. [18, 19].[2]

---

[1] Summonses for all defendants were issued on October 2, 2014. [5]. Because more than 120 days has elapsed and Taylor has yet to be served, Abdel-Fares' action with respect to Taylor is ripe for dismissal without prejudice. Fed R. Civ. P. 4(m). However, as discussed below, Abdel-Fares' complaint fails to state a claim for relief against all defendants, including Taylor, and thus the claims against Taylor should be dismissed with prejudice.

[2] In the interim, Abdel-Fares had filed a response to Defendants' initial motion to dismiss, which motion Defendants then withdrew. [16, 17]. Thus, the only motion before the Court is Defendants' motion to dismiss Abdel-Fares' amended complaint. [15].

**B.	Standard of Review**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555–56).

In deciding whether a plaintiff has set forth a "plausible" claim, a reviewing court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Furthermore, a court is not required to "create a claim which [a plaintiff] has not spelled out in his pleading." *Clark v. Nat'l*

*Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers.  *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007).  Nonetheless, "[t]he leniency granted to pro se [litigants] . . . is not boundless."  *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and such "complaints still must plead sufficient facts to show a redressable legal wrong has been committed."  *Baker v. Salvation Army*, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

**C.   Analysis**

Defendants argue that Abdel-Fares' amended complaint should be dismissed because he has not properly alleged a First Amendment retaliation claim, because his First Amendment and Fourth Amendment claims are threadbare, and because even if his complaint was properly pled, being placed on a HA program does not implicate any constitutional rights.

*i.   Abdel-Fares' Claims are Threadbare and Should be Dismissed*

Abdel-Fares' operative complaint[3] is primarily comprised of legal conclusions supported by only a few factual allegations.  He asserts that Taylor "informed Abdel-Fares that he was being placed on a high accountability program watch, which required Abdel-Fares to report to the Captain's office on a regular, two-hour schedule throughout the day." [14 at ¶9].  He claims

---

[3] Abdel-Fares has modified (or attempted to modify) his claims for relief several times through his amended complaint [14], response to Defendants' motion to dismiss his original complaint [16], and his response to Defendants' motion to dismiss his amended complaint. [18].  While Abdel-Fares cannot amend his complaint by raising new allegations in his response briefs, the Court will nevertheless consider his allegations in all three of these three filings.  Because an amended complaint supercedes all prior complaints, Abdel-Fares' original complaint will not be considered.  *See Drake v. City of Detroit, Michigan*, 266 F. App'x 444, 448 (6th Cir. 2008).

that Terris informed him that "the sole reason that [he] was placed in the high accountability program was that he 'may be a threat' to prison security." [18 at 3]. He further alleges that "Defendant's [sic] individual and collective conduct in placing Abdel-Fares on a high accountability program without an articulated and reasonable basis to do so constitutes a violation of [his] First Amendment rights," and that "despite his repeated requests of the Defendants to provide a substantive basis for their decision to place him on a high accountability program, at no time was any specific basis provided to Abdel-Fares." [14. at ¶23, 36].

Abdel-Fares also alleges that Defendants have engaged in "acts of intimidation, harassment, retaliation and the deprivation of certain privileges that Abdel-Fares would otherwise be entitled to benefit from." [14 at ¶23]. Further, he claims that his inclusion in the HA program has resulted in "consistent acts of intimidation and harassment by FCI Milan staff, specifically including threats of placement in the Special Housing Unit and repeated threats of locker 'shake-downs' . . . . motivated to impact Abdel-Fares' protected free speech (i.e. to best insure that [he] would not pursue legal action for violation of his constitutional rights)." [16 at 5]. He later alleges that "defendants, on repeated occasions, ridiculed, intimidated and harassed [him] verbally regarding the consequences should he not timely report as the [HA] program required." [18 at 4]. Abdel-Fares does not identify which specific defendant(s) engaged in which specific conduct, or when any of the alleged conduct occurred. Nor does he provide any additional information which might lend plausibility to his allegations.

Finally, Abdel-Fares asserts that his inclusion in the HA program infringed on his religious liberty, because "checking in with the captain every two hours effectively prevented him practicing his religion, which obligates him to pray at designated times (5 in total) during the day." [18 at 6].

The Court first addresses Abdel-Fares' claims against defendant True. While Abdel-Fares names Taylor, Terris, and True as defendants, he makes no specific allegations regarding the conduct of True whatsoever, but rather relies solely upon generalized allegations that "Defendants" engaged in certain acts. This is insufficient as a matter of law. To demonstrate liability under §1983 as to any particular defendant, a plaintiff must first establish that that defendant acted under color of state law and that his actions violated rights secured by the Constitution and/or laws of the United States. *See Baker v. McCollan*, 443 U.S. 137 (1979). The plaintiff also must make a clear showing that the defendant was personally involved in the activity that forms the basis of the complaint. *See Rizzo v. Goode*, 423 U.S. 362, 377 (1976); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Here, where Abdel-Fares has not alleged any conduct by defendant True, he clearly has not properly alleged that defendant's personal involvement in any unconstitutional activity. Thus, Abdel-Fares' claims against True should be dismissed.

Turning to Defendants Taylor and Terris, Abdel-Fares' allegations are only slightly more informative, yet no more sufficient to overcome Defendants' instant motion. Abdel-Fares makes only two specific allegations of conduct with respect to those defendants: that Taylor informed him that he was put on the HA program [14 at ¶9], and that Terris told him the reason for his inclusion in that program was because he posed a threat to prison security. [18 at 3]. Abdel-Fares does not allege that either Taylor or Terris actually placed him on the HA program, or even played any part in the decision to place him on that program. As to Abdel-Fares' allegations that "Defendants" (and other unnamed FCI Milan staff) engaged in acts of intimidation, ridicule and harassment following his inclusion in the program, [14 at ¶23; 16 at 5; 18 at 4], he fails to specify how Taylor or Terris were involved in any of this alleged conduct.

6

A complaint which does not allege specific acts of conduct on the part of each defendant, supported by factual allegations regarding each one, is insufficient to put the defendants on notice of the claims against them and should be dismissed. In *Rodriguez v. Jabe*, 904 F.2d 708 (6th Cir. 1990), a prisoner alleged that his receipt of necessary medical items was interrupted by several prison staff; the court found that prisoner's complaint was properly dismissed as to two prison medical staff members because "the complaint contained no specific allegations" regarding those defendants, and thus was "without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries." *See also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing a *pro se* plaintiff's complaint for failing to allege "specific facts in support of his conclusory allegations that the defendants violated his constitutional and statutory rights"); *Griffin v. Montgomery*, 238 F.3d 421 (6th Cir. 2000) (affirming a district court's dismissal of a *pro se* plaintiff's complaint "because he did not allege personal involvement by either of these defendants in the alleged denial of his rights").

Because Abdel-Fares' claims against each defendant are threadbare and deficient, his complaint should be dismissed for failure to state a claim upon which relief may be granted.

>    ii.    *Abdel-Fares' Allegations Do Not Support a First Amendment Retaliation Claim*

Even if Abdel-Fares pleaded facts sufficient to demonstrate that Defendants were personally involved with the conduct he alleged, the Court would nevertheless recommend dismissing his claims because he has not alleged that he suffered any deprivation of a cognizable constitutional right.

To properly lodge a retaliation claim under the First Amendment, a plaintiff must allege that

7

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (citations omitted). Protected conduct is that which involves "individual rights with which the government generally cannot interfere," including the filing of non-frivolous grievances (*Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)), access to the courts (*Dean v. Conley*, 198 F.3d 244 (6th Cir. 1999)), and exposing the wrongdoing of public officials (*Arnett v. Myers*, 281 F.3d 552, 560 (6th Cir. 2002)).

Abdel-Fares asserts, quite circularly, that "he was engaged in protected conduct by virtue of the fact that there was no reasonable basis or factual support for his inclusion in the high accountability program." [16 at 5]. As noted *supra*, he also alleges that "defendants' acts of intimidation, harassment and retaliation were specifically imposed by the defendants to deter Abdel-Fares from pursuing his legal remedies as provided by law." [*Id*.]. He further explains that he has been "on repeated occasions, ridiculed, intimidated and harassed . . . verbally regarding the consequences should he not timely report as the [HA] program required." [18 at 4].

Abdel-Fares has not identified any conduct whatsoever that occurred *prior* to his inclusion in the HA program that might have motivated the alleged "retaliation." Thus, Abdel-Fares has failed to state a claim of retaliation with respect to his placement into the HA program. Furthermore, Abdel-Fares himself acknowledges that "the sole reason that [he] was placed in the high accountability program was that he 'may be a threat' to prison security," which also fails to establish the protected conduct requirement of his claim. [18 at 3]. Abdel-Fares has not alleged that he was harassed because he threatened to sue or file a grievance, or because he engaged in

8

any other protected conduct.[4]  Instead, Abdel-Fares states that he has been harassed "regarding the consequences should he not timely report as the program required." [*Id*. at 4]. Failing to report on time per the strictures of the HA program is not protected conduct. Abdel-Fares has thus not alleged that he engaged in any act of protected conduct which might have motivated the alleged acts of retaliation, and his First Amendment retaliation claim should be dismissed.

### iii. Abdel-Fares' Religious Discrimination Claim Should be Dismissed

In his response to Defendants' motion to dismiss the amended complaint, Abdel-Fares, for the first time, alleged that his inclusion in the HA program caused "impingement on his religious practices" because "checking in with the captain every two hours effectively prevented him from practicing his religion, which obligates him to pray at designated times (5 in total) during the day." [18 at 6]. Even if the Court were to consider this allegation as an attempt to further amend his complaint, it would be insufficient to state a claim for relief. Despite Abdel-Fares' *pro se* status, he may not simply "mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *United States v. Robinson*, 390 F.3d 853, 886 (6th Cir. 2004) (citation omitted). "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Id*. Here, Abdel-Fares has not alleged any facts as to how the reporting requirements of the HA program negatively impact his ability to practice his (unspecified) religion. As with his other claims, Abdel-Fares has made no effort to develop his purported religious discrimination claim with any facts, and it thus fails the

---

[4] While Abdel-Fares alleges that he "filed a BP-8.5 Informal Resolution Request contesting the propriety of the Defendants' decision to place him on a high accountability program" on November 17, 2013, and that he "filed a BP-9, BP-10 and BP-11 to Warden J.A. Terris," he does not allege that any of the Defendants harassed him in response to these filings, nor does he specify when Defendants allegedly threatened him. [14 at ¶21-22]. Abdel-Fares has thus not adequately alleged retaliation by Defendants for filing these forms, or that a causal relationship existed between his protected conduct and his alleged harassment.

pleading standards discussed above. *See supra* at 3-4.

### iv. Abdel-Fares' Due Process Claim Should be Dismissed

Abdel-Fares also argues that Defendants' conduct "violated his Fourth Amendment Due Process rights by depriving Abdel-Fares of his liberty interest without first affording Abdel-Fares a meaningful opportunity to be heard and confront his accusers (the Defendants herein)." [14 at ¶38]. Abdel-Fares appears to refer to the Fourth Amendment in error, perhaps intending to refer to the 14th Amendment's Due Process clause, which provides that "[no] State [shall] deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. IV, §1. Actually, assuming Abdel-Fares intended to refer to the 14th Amendment, that would also be in error because, in suits against federal prisons and their officials, it is the Fifth Amendment's provision that no person "shall . . . be deprived of life, liberty, or property, without due process of law" which is controlling, not the 14th Amendment's similar verbiage which applies only to States and their instrumentalities and agents. *Scott v. Clay County Tenn.*, 205 F.3d 867, 873 n. 8 (6th Cir. 2000) ("The Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government."); U.S. Const. amend. V. At any rate, because Abdel-Fares is a prisoner at FCI Milan, a federal correctional institution, and a *pro se* litigant, the Court will construe this argument as a due process claim under the Fifth Amendment.

Due process rights include both a substantive and a procedural component: substantive due process "prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty," whereas procedural due process requires that such deprivations are "implemented in a fair manner." *United States v. Salerno*,

481 U.S. 739, 746 (1987) (quotation and citation omitted); *see also Heard v. Caruso*, 351 F. App'x 1, 9 (6th Cir. 2009) (noting that procedural due process tests "whether the state afforded the inmate sufficient process").

A prisoner can prevail on an alleged deprivation of procedural due process rights only where he has been subjected to "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" without due process. *Bradley v. Evans*, 229 F.3d 1150 at *3 (6th Cir. 2000) (quoting *Sandin v. Conner*, 515 U.S. 472, 472 (1995)). The Sixth Circuit has frequently found that procedural due process rights are not implicated by placement in highly restrictive conditions of confinement, including temporary commitment to maximum security administrative segregation. *See Williams v. Lindamood*, 526 F. App'x 559, 563 (6th Cir. 2013) (holding that temporary confinement to administrative segregation, including confinement to a cell for 23 hours per day, was not an atypical or significant hardship); *Evans*, 229 F.3d 1150 at *8 (holding that temporary confinement to maximum security punitive segregation did not violate a prisoner's procedural due process rights).

The requirement that Abdel-Fares check in with prison staff every two hours is far less onerous than being placed in administrative or punitive segregation, and is neither atypical nor significant compared to the ordinary incidents of prison life. Moreover, the Sixth Circuit has specifically found that reporting programs similar to the HA program do not impose a significant hardship, and thus do not implicate due process rights. *See Bloomer v. Holland*, 198 F.3d 244 (6th Cir. 1999) (finding that a policy requiring an inmate to check in every two hours did not violate Due Process rights); *Pearce v. Sapp*, 182 F.3d 918 (6th Cir. 1999) (holding that a twice daily check in program did not implicate a Due Process right because prisoners have "no constitutional right to any particular placement or security classification.").

11

To whatever extent Abdel-Fares argues that his procedural due process rights have been violated by threats of being placed in a special housing unit or searches of his cell, he similarly fails to state a claim upon which relief may be granted because neither act would violate his constitutional rights. *See Merch. v. Hawk-Sawyer*, 37 F. App'x 143, 146 (6th Cir. 2002) (holding that a prisoner's "21-month confinement in the special housing unit does not give rise to a protected Fourteenth Amendment liberty interest because it is not an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life") (quotation and citation omitted); *Flournoy v. Morris*, 819 F.2d 289 (6th Cir. 1987) (holding that "[p]risoners do not have a legitimate expectation of privacy, and the fourth amendment prohibition against unreasonable searches does not apply in prison cells.").

Insofar as Abdel-Fares argues that his substantive due process rights have been violated, his claim similarly fails. "A plaintiff asserting a substantive due process claim faces a virtually insurmountable uphill struggle. He must show that the government conduct in question was so reprehensible as to 'shock the conscience' of the court." *Rimmer–Bey v. Brown*, 62 F.3d 789, 791 n. 4 (6th Cir. 1995) (citing *Rochin v. California*, 342 U.S. 165 (1952)). As discussed *supra*, the Sixth Circuit has held that two-hour reporting programs do not violate prisoners' due process rights, nor does the harassment he allegedly experienced. Thus, Abdel-Fares' due process claim should be dismissed.

> v.   *Abdel-Fares' Sixth Amendment Claim Should be Dismissed*

Abdel-Fares next argues that "[t]he Fourth Amendment to the United States Constitution requires that all U.S. citizens be afforded a meaningful opportunity to be heard and to be able to confront his or her accusers in an adversarial setting that potentially involves the loss of liberty." [14 at 4]. Abdel-Fares appears to have confused the Fourth Amendment, which establishes "the

12

right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures," U.S. Const. amend. IV[5], with the Sixth Amendment's Confrontation Clause, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him," U.S. Const. amend. VI.  A plain reading of the Sixth Amendment demonstrates that it applies only to criminal prosecutions, and thus has no applicability to the instant civil action.  *See Burchett v. Kiefer*, 310 F.3d 937, 947 (6th Cir. 2002). Thus, to whatever extent he raises a claim under the Confrontation Clause of the Sixth Amendment, that claim should be dismissed.

     Abdel-Fares also expresses concern that he has not been told what "specific conduct [he] committed . . . that would reasonably support" his inclusion in the HA program.  [18 at 3; *see also* 16 at 5].  In his amended complaint, he asserts that his right to a "meaningful opportunity to be heard and to be able to confront his or her accusers in an adversarial setting . . . despite his repeated requests of the Defendants to provide a substantive basis for their decision to place him on a high accountability program, at no time was any specific basis provided to Abdel-Fares." [14 at 4].  Abdel-Fares may find being subjected to the HA program frustrating, but this fact alone does not entitle him to an explanation for his inclusion in that program (though he admits he was given one; that he was considered a potential threat to prison security at FCI Milan when he arrived there).  [18 at 3].  Prisoners are regularly subjected to programs and processes that interrupt the quiet enjoyment of daily life.  *See Overton v. Bazzetta*, 539 U.S. 126, 131 (2003)

---

[5] Abdel-Fares states in his response to Defendants' motion to dismiss his amended complaint that "[t]he Fourth Amendment protects against unreasonable searches and seizures . . . Abdel-Fares has concluded that he cannot sufficiently plead facts to support a fourth amendment claim in this matter.  Accordingly, Abdel-Fares is in agreement with the defendants [sic] conclusion and requests for a dismissal pursuant to Rule 12(b)(6)." [18 at 7].  To whatever extent Abdel-Fares alleges a claim pursuant to his right to be free from unreasonable searches and seizures, that claim should thus be dismissed.

("Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration."). While Abdel-Fares may find a more complete explanation for his inclusion in the HA program satisfying, his inclusion in the HA program does not implicate his due process rights, thus he is not entitled to notice or an opportunity to be heard in this instance.

> vi. *Abdel-Fares Should Not be Granted Leave to Amend His Complaint*

A party may amend its pleading once as a matter of course within twenty-one days after service of a responsive pleading or twenty-one days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). Otherwise, a party may amend only with the opposing party's written consent or the court's leave, which should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). However, a court should deny a motion to amend "if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dep't. of Treasury, State of Michigan, Revenue Div.*, 987 F.2d 376, 382–83 (6th Cir. 1993).

Abdel-Fares amended his complaint on January 23, 2015, and may only amend a second time with leave of the Court. [14]. Abdel-Fares has not actually filed a second amended complaint or a motion for leave to amend, but rather simply references his willingness to file an amendment should the Court request it. [18 at 4-6]. Such a vague offer in his response brief is not the appropriate way to lodge a motion to amend. *Louisiana Sch. Employees' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) (holding that a plaintiff's request to

amend his complaint in a brief opposing a motion to dismiss was improper, and should not have been granted because of this procedural deficiency). Moreover, even if the Court was to treat Abdel-Fares' request as a motion to amend, it would nevertheless recommend denying that motion. Abdel-Fares had a full opportunity to plead his factual claims against Defendants, but has failed to allege that Terris, True, or Taylor played any role in his placement in the HA program or alleged harassment. Moreover, as discussed *supra*, neither his inclusion in the HA program nor the harassment he allegedly suffered violated his constitutional rights, thus any amendment would be futile.

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss **[15]** be **GRANTED** and that Abdel-Fares' Amended Complaint **[14]** be **DISMISSED WITH PREJUDICE**.

Dated: April 29, 2015             s/David R. Grand
Ann Arbor, Michigan          DAVID R. GRAND
                                              United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to

this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 29, 2015.

                                            s/Eddrey O. Butts
                                            EDDREY O. BUTTS
                                            Case Manager